**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **CLIFF JURKIEWICZ, on behalf** | : | |
| **of himself, and all others similarly** | : | **Case No.** |
| **situated,** | : | |
| **976 Spruce Street** | : | |
| **Pottstown, PA  19464** | : | **Judge** |
| | : | |
| **Plaintiff,** | : | |
| | : | **Magistrate Judge** |
| **v.** | : | |
| | : | |
| **GOJO INDUSTRIES, INC.** | : | **CLASS ACTION COMPLAINT** |
| **d/b/a PURELL,** | : | |
| **One Gojo Plaza, Suite 500** | : | |
| **Akron, OH 44311** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **SERVE ALSO:** | : | |
| | : | |
| **BDB Agent Co., Statutory Agent** | : | |
| **3800 Embassy Parkway, Suite 300** | : | |
| **Akron, Ohio 44333** | : | |
| | : | |
| **Defendant.** | : | |

Plaintiff, Cliff Jurkiewicz, by and through his counsel, assert the following claims in this

class action against Defendant Gojo Industries, Inc. d/b/a Purell ("Defendant" or "the Company"),

based upon personal knowledge, where applicable, information and belief, and the investigation

of counsel.

## I.      INTRODUCTION

1.      Defendant's "Purell" products are universally recognized and trusted to provide

swift, effective protection from germs which cause diseases and illness.  Defendant, however, has

broken consumers' trust.  It falsely markets its Purell Healthcare Advanced Hand Sanitizer

products,[1] which include Purell Advanced Hand Sanitizer, as protecting consumers from pathogens such as flu, norovirus, MRSA, VRE, Ebola, and Candida auris, among others. Plaintiff and other members of the Class purchased Purell Healthcare Advanced Hand Sanitizer Gel, Purell Advanced Sanitizer Gentle & Free Foam, and Purell Healthcare Advanced Hand Sanitizer Foam, for their own personal use based on Defendant's false and misleading advertising and deceptive business practices during the Class Period.

2.     In a January 17, 2020 warning letter sent to Defendant (the "Warning Letter"), the U.S. Food and Drug Administration ("FDA") described the Products as nothing more than topical antiseptic not adequately proven to be safe and effective for preventing disease or infection from pathogens such as the ones described above. The Warning Letter describes misrepresentations made by Defendant in connection with its advertising of the Products and notifies Defendant that the Products amount to an unapproved new drug for which no marketing approval was sought. Defendant has unlawfully been misleading consumers to believe that its "topical antiseptic" can prevent illness and reduce disease by making claims that go well beyond the capabilities of such an antiseptic.  In so doing, Defendant has gained tremendous brand recognition and prestige and reaped millions in Products' sales while Plaintiff and the Class are left dirty-handed.  Defendant's conduct has caused Plaintiff and other similarly situated to suffer economic damages, and restitution and injunctive relief are required to remedy and prevent further harm.

---

[1] The PURELL® Healthcare Advanced Hand Sanitizer product line includes the over-the-counter (OTC) drug products "PURELL® Healthcare Advanced Hand Sanitizer Gentle & Free Foam," "PURELL® Healthcare Advanced Hand Sanitizer Gel," "PURELL® Healthcare Advanced Hand Sanitizer Foam," "PURELL® Healthcare Advanced Hand Sanitizer Gentle & Free Foam ES6 Starter Kit," and "PURELL® Healthcare Advanced Hand Sanitizer ULTRA NOURISHING™ Foam"  (collectively referred to herein as "the Products").

## Parties

3.      Plaintiff Cliff Jurkiewicz is a resident and citizen of Montgomery County in the Commonwealth of Pennsylvania.

4.      Defendant Gojo Industries, Inc. is a privately held Ohio corporation with its principal place of business in Akron, Ohio. It is a citizen of the State of Ohio.

5.      Defendant is engaged in the business of manufacturing and distribution of hand hygiene products, including hand sanitizers.  Defendant sells its Products at retail stores throughout the country, including Ohio and Pennsylvania, and through the Internet.

## Jurisdiction and Venue

6.      This Court has jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d), because at least one Class member is of diverse citizenship from one defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

7.      The Northern District of Ohio has personal jurisdiction over Defendant because it is headquartered in Akron, Ohio and conducts substantial business in this District through its headquarters, retail stores, and Internet sales.

8.      Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant is headquartered in this District and has caused harm to Plaintiff and certain class members residing in this District.

## II.     FACTUAL ALLEGATIONS

9.      Defendant's Products' marketing claims are present on the Products themselves, the Products' websites, including Frequently Asked Questions pages, blogs, and social media pages.  The false and misleading claims include, among others, that the Products "kills more than

99.99% of most common germs that may cause illness in a healthcare setting, including MRSA [methicillin-resistant Staphylococcus aureus] and VRE [vancomycin-resistant enterococci]."[2]

10.    Defendant also claims that the Products "[c]an reduce student absenteeism by up to 51%.... Additionally, teachers who follow this program also experience a reduction of absenteeism."[3]

11.    In discussing infectious diseases, Purell claims that Purell Hand Sanitizer Products "may be effective against viruses such as the Ebola virus, norovirus, and influenza" and that "the World Health Organization (WHO) and the Centers for Disease Control and Prevention (CDC) are recommending the use of alcohol-based hand sanitizer as a preventative measure for flu prevention."[4]

12.    Notably, however, hand washing is the primary method to prevent the spread of influenza (aside from vaccination).[5] The CDC only recommends using hand sanitizer if soap and water are not available.[6]Plaintiff Jurkiewicz  frequently travels around the United States of America, including visiting many regional and international airports, and regularly purchases Defendant's Purell Healthcare Advanced Hand Sanitizer Gentle & Free Foam, Purell Healthcare Advanced Hand Sanitizer Gel, and Purell Healthcare Advanced Hand Sanitizer Foam at CVS, Walmart, Landis Supermarkets, and Giant Supermarkets in the Commonwealth of Pennsylvania for between $3 to $20 (multi-packs) during the Class Period.

13.    Plaintiff has regularly purchased the Products referenced herein since at least 2006.

[2] FDA, Warning Letter to Gojo Industries, Inc., January 17, 2020, MARS-CMS 599132.
[3] FDA, Warning Letter to Gojo Industries, Inc., January 17, 2020, MARS-CMS 599132.
[4] FDA, Warning Letter to Gojo Industries, Inc., January 17, 2020, MARS-CMS 599132.
[5] A 2018 study suggested that certain bacteria may develop tolerance to alcohol-based sanitizers over time Sacha J. Pidot, et al., *Increasing tolerance of hospital Enterococcus faecium to handwash alcohols,* Science Translational Medicine, 01 Aug 2018: Vol. 10, Issue 452 (https://stm.sciencemag.org/content/10/452/eaar6115). *See also* https://www.cdc.gov/flu/prevent/preventing.htm.
[6] https://www.cdc.gov/flu/treatment/whatyoushould.htm (last visited on February 9, 2020).

4

14.     During the Class Period, Plaintiff purchased the Products in the states of Pennsylvania, California, Florida, New Jersey, Massachusetts, Virginia, Washington, D.C., and Hawaii.

15.     Plaintiff regularly travels from his home in Pennsylvania to California from 2011 to the present and regularly purchased the Products so that he may carry them with him while traveling. During traveling to and from California, he generally purchases the travel size of the Products due to TSA restrictions on liquid carry-on items. While in California, he typically purchases the Products at Hudson News in Los Angeles International Airport (LAX) and from various CVS locations in and around Los Angeles. Plaintiff last purchased the Products on December 7, 2019 at CVS located at 1026 S. Broadway, Suite A, Los Angeles, CA 90015.

16.     Plaintiff also frequently uses the publicly available liquid, foam, and/or wipes of the Products when using shopping carts at the store.

17.     Before and while using the Products, Plaintiff researched and read advertisements regarding the Products ability to kill germs. But for reviewing these advertisements about the Products ability to kill germs, Plaintiff would not have purchased the Products.

18.     Because of the Products' statements that it would kill virtually all germs, Plaintiff believed that he would be protected against viruses and bacteria while using the Products.

19.     The Products Plaintiff purchased prominently displayed "Kills more than 99.9% of Germs…" on the front of the Products:



20.    Germs are made up of bacteria, viruses, fungi, and protozoa.

21.    By Defendant stating that its Products kill 99.99% of germs, it is actually stating that the Products kill 99.99% of bacteria and viruses. Defendant then makes the jump to the conclusion that by killing 99.99% of bacteria and viruses, this results in the Products preventing disease and reducing illness, which is not true.

22.    Plaintiffs purchased the Products after reviewing Defendant's representation that its Products prevent disease or reduce infection from pathogens such as Ebola, MRSA, VRE, norovirus, flu, and Candida auris with the expectation that the Products indeed performed as Defendant represented.

23.    If Plaintiff had known that the Products were not effective at preventing disease or illness, he would not have purchased the Products or would have paid substantially less for them.

24.     Defendant manufactures, markets, and sells the Products online through its own website and other retailers, which it advertises on its website and Facebook page and related advertising materials as preventing disease.

25.     At the time Plaintiff purchased the Products, Plaintiff believed the representations made on Defendant's Products' labels and website that the Products prevented disease and reduced illnesses. Plaintiff reasonably believed that the Products would prevent disease and reduce illness or purchased the Products after reviewing Defendant's representations that the Products prevented disease and reduced illnesses.

26.     On information and belief, Defendant's Products' label, packaging, and advertising materials are prepared and/or approved by Defendant and/or its agents.

27.     As mentioned in detail above, there is no evidence that Defendant's Products prevent disease or reduce illness.

28.     The "FDA is currently not aware of any adequate and well-controlled studies demonstrating that killing or decreasing the number of bacteria or viruses on the skin by a certain magnitude produces a corresponding clinical reduction in infection or disease caused by such bacteria or virus." https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/gojo-industries-inc-599132-01172020 (Last visited on 2/7/2020).

29.     Consequently, Defendant's Products are misleading by marketing as preventing disease and reducing illness.

30.     Defendant knew or should have known that its Products' labels and advertising materials were misleading or false.

31.     Because of Defendant's unfair and deceptive advertising and manufacturing practices, Plaintiff and other consumers similarly situated purchased and overpaid for Defendant's Products under the false impression that the Products prevented disease and reduced illness.

32.     Had Plaintiff been aware that there was no evidence that the Products prevented disease and reduced illness, Plaintiff would not have purchased the Products. In other words, Plaintiff would not have purchased Defendant's Products but for the representations on the Products' related advertising.

33.     Plaintiff and others similarly situated were exposed to and reviewed the same material misrepresentations made on Defendant's Products' labels and website, where Defendant sold, and currently sells, its Products to consumers throughout the State of California and the United States.

34.     As a result of Defendant's false and misleading statements, Plaintiff and others similarly situated consumers purchased tens or hundreds of thousands, of units of Defendant's Products, and have suffered, and continue to suffer, injury in fact through the loss of money and/or property.

35.     Included within the demands of this Complaint are any products manufactured by Defendant, which are characterized by Defendant as "hand sanitizers".

36.     This action seeks, among other things, equitable and injunctive relief, restitution of all amounts illegally obtained, and disgorgement of any and all ill-gotten gains as a result of the misconduct alleged herein.

37.     Defendant dominates the hand sanitizer market. According to Purell's website, "[i]n 1997, PURELL® Hand Sanitizer was made available to consumers. It soon became America's #1 hand sanitizer and a significant part of popular culture."[7]

38.     Purell is everywhere. It is used in people's homes, shopping areas, airports, schools, and carried around by Class Members in school backpacks, purses, and briefcases.

39.     As Defendant says on the Purell website, "[t]oday, PURELL® Hand Sanitizer remains one of the most recognized brands in the world. It defines the hand sanitizer category and is the brand most preferred by doctors, professionals and consumers everywhere."[8]

40.     For years, Defendant has patterned its advertising using a consistent playbook. First, scare people about the flu. Second, given them some tips on reducing the chances of infection.

41.     Third, slip in a recommendation to use a hand sanitizer either in addition to washing hands with soap and water or in place of soap and water if they are not available. Fourth, let consumers see the words "flu" and "Purell" in the same space. Fifth, let consumers reach the inference that Purell must prevent and reduce the flu and other viruses based on the wording and images used. Purell is everywhere. It is used in people's homes, shopping areas, airports, schools, and carried around by Class Members in school backpacks, purses, and briefcases.

## III.    CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action on behalf of himself and a class ("Nationwide Class" or "Class") defined as follows:

> All persons residing in the United States who, during the maximum period of time permitted by law, purchased Purell Products for personal, family or household purposes, and not for resale.[9]

---

[7] *See* https://www.purell.com/about-purell (last visited on 2/8/2020).
[8] *Id.*
[9] Plaintiff reserves the right to amend this definition as necessary.

43.     Alternatively, Plaintiff brings this action on behalf of himself and the members of the following subclass ("California Subclass"):

> All persons residing in the State of California who, during the maximum period of time permitted by law, purchased Purell Products for personal, family or household purposes, and not for resale.[10]

44.     Alternatively, Plaintiff brings this action on behalf of himself and the members of the following subclass ("Pennsylvania Subclass"):

> All persons residing in the Commonwealth of Pennsylvania who, during the maximum period of time permitted by law, purchased Purell Products for personal, family or household purposes, and not for resale.[11]

45.     Specifically excluded from these definitions are (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the District Court Judge's staff or immediate family; and (3) Class Counsel.

46.     As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and all subclasses, including Plaintiff.

47.     Plaintiff seeks only damages and equitable relief on behalf of himself and the Class Members.

48.     Members of the Class and Subclasses are so numerous that joinder is impracticable. While the exact number of Class Members is unknown to Plaintiff, it is believed that the Class comprises at least hundreds of thousands of members geographically disbursed throughout the United States. Therefore, the Class Members are so numerous that individual joinder of all Class Members is impracticable under Fed. R. Civ. P. 23(a)(1).

---

[10] Plaintiff reserves the right to amend this definition as necessary.
[11] Plaintiff reserves the right to amend this definition as necessary.

49.     Common questions of law and fact exist as to all Class Members, as required by Fed. R. Civ. P. 23(a)(2), and predominate over any individual questions, as required by Fed. R. Civ. P. 23(b)(3).  These common legal and factual questions include:

a.  Whether Defendant's branding and packaging was deceptive in that it conveyed to the reasonable consumer that the Products would prevent disease and reduce illness.

b.  Whether Defendant's claim that the Purell Products are effective at preventing disease and reducing illness;

c.  Whether Defendant's claims and representations, as alleged herein, are untrue, misleading, and/or likely to deceive the average consumer;

d.  Whether Defendant's conduct violates the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.01 *et seq*.;

e.  Whether Defendant's conduct violates the Pennsylvania Unfair Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §§ 201-2 & 201-3 *et seq.*;

f.  Whether Defendant's conduct violates California Civil Code §§ 1750, *et seq*.;

g.  Whether Defendant's advertising is false, untrue, or misleading within the meaning of California Business and Professions Code §§ 17500, *et seq*.;

h.  Whether Defendant's conduct is an unfair, fraudulent, or unlawful act or practice within the meaning of California Business & Professions Code §§ 17200, *et seq*.;

i.  Whether Defendant should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of the Purell Products; and,

j.  Whether Plaintiff, the Class, and the Subclasses are entitled to damages, including compensatory, exemplary, punitive and statutory damages, and the amount of such damages.

50. Plaintiff's claims are typical of the claims of the Class Members whom he seeks to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiff and each Class Member have been similarly affected by Defendant's actionable conduct. Plaintiff and all members of the Class purchased Products that are either worthless or worth substantially less than the price paid to purchase the Products  In addition, Defendant's conduct and omissions that gave rise to the claims of Plaintiff, Class Members, and the Subclasses is the same for all Class and Subclass Members.

51. Plaintiff will fairly and adequately represent and protect the interests of the Class Members as required by Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative because his interests do not conflict with the interests of the Class Members. Further, Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to prosecute this action vigorously. Therefore, the interests of the Class Members will be fairly and adequately protected.

52. A class action is appropriate under Fed. R. Civ. P. 23(b)(3) because a class action is superior to any other available means for fairly and efficiently adjudicating the controversy. In this regard, the Class Members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against a large corporation such as Defendant. Further, neither Plaintiff nor his counsel are aware of any other on-going class litigation concerning this controversy. It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits. Individualized litigation presents a potential for inconsistent or contradictory judgments, and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case. By contrast, the class action procedure here will have no management difficulties.

53.     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## IV.     CAUSES OF ACTION

### COUNT I
### Violation of Ohio Consumer Sales Practices Act; Ohio Revised Code § 1345.01 *et seq*.
### (on behalf of Nationwide Class)

54.     Plaintiff restates and incorporates all other allegations in this Complaint as though fully pled herein.

55.     Defendant is a supplier within the definition of the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.01 ("CSPA"), as it supplied and manufactured the Products that Plaintiff and members of the Class purchased.

56.     Plaintiff and Class members are consumers as defined in the CSPA.

57.     Plaintiff and the Class purchased the Products after reviewing Defendant's representations that the Products prevent and/or reduce disease and illness.  These were consumer transactions.

58.     But for Defendant's misleading statements about the Products preventing and/or reducing disease and illness, Plaintiff and the Class would not have purchased the Products or would have paid substantially less for the Products.

59.     Defendant places deceptive representations about the Products on the Products' labels and in online advertisements on Defendant's website.

60.     The specific promises and representations discussed and quoted throughout this complaint regarding the Products' ability to prevent and/or reduce disease and illness are misleading and deceptive.

61. Defendant's representations regarding the Products' illness and disease prevention and/or reduction capabilities are material to a reasonable consumer and were designed to affect consumer decisions and conduct.

62. Defendant understood and intended that the representations about the Products' disease and illness prevention and/or reduction capabilities would influence consumer behavior.

63. Defendant understands it has an obligation to ensure the honesty of all promotions and avoid misleading the public regarding its Products.

64. Defendant's misleading statements in point of sale materials, on its website and on the actual Products, constitute unfair, deceptive, and/or unconscionable acts or practices in connection with consumer transactions involving the sale of hand sanitizer to Plaintiff and the Class.

65. Defendant's acts and practices offend public policy as established by statute.

66. Defendant's acts and practices are immoral, unethical, oppressive and unscrupulous.

67. Defendant's conduct substantially injured actual and potential consumers, the public and competition in each of the states in which the Products were sold. As Defendant knows, Plaintiff and Class members would not pay the prices they paid absent Defendant's false and misleading representations about the Products' disease and illness prevention capabilities or would have paid substantially less for the Products.

68. Defendant's conduct materially affected available information regarding its products to consumers nationwide and in each state in which the Products were sold. Defendant's conduct thus improperly distorted the information available to the public regarding the Products.

69. Defendant's actions caused consumers to overpay for the Products. These injuries are not outweighed by any countervailing benefits to consumers or competition. No legally cognizable benefit to consumers or competition results from Defendant's misconduct.

70. Defendant's actions involved information material to the Products' purchases. The misleading nature of the promises or affirmations at the point of sale, online, on the actual Products and other similar representations, and the failure to include necessary explanatory information regarding such representations, were material to the price at which consumers purchased the Products.

71. Because the representations about disease and illness prevention and germ-killing capability involve technical and/or medical information that an ordinary consumer could not readily test or verify, consumers could not have reasonably avoided the losses caused by misrepresentations forming the basis for the Products' price.

72. Plaintiff and the Class purchased the Products for personal, family or household use and not for resale. Thus, the practices discussed above constitute unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of the CSPA.

73. The foregoing unfair and deceptive practices directly, foreseeably, and proximately caused Plaintiff and the Class to suffer an ascertainable loss when they paid a premium for the Products above and beyond what they should have paid and provided Defendant more in revenues for the Products than they could have received absent its false and misleading representations.

74. The Products either have no effect on the prevention or reduction of disease and illness, or such a marginal effect that the representations about the Products' ability to prevent and/or reduce disease and illness creates a capacity to mislead the average consumer.

75.     As described throughout this Complaint, Defendant violated R.C. 1345.02 by engaging in the following acts and practices:

     a.  Committing unfair or deceptive acts or practices in connection with consumer transactions. R.C. 1345.02(A).

     b.  Representing that the Products have sponsorship, approval, performance characteristics, accessories, uses, or benefits that they do not have. R.C. 1345.02(B)(1).

     c.  Representing that the Products are of a particular standard, quality, grade, style, prescription, or model that they are not. R.C. 1345.02(B)(2).

     d.  Representing that the Products are available to consumers for reasons that do not exist. R.C. 1345.02(B)(4).

     e.  Representing that the Products have been supplied in accordance with previous representations when they have not. R.C. 1345.02(B)(5).

     f.  Representing that Defendant and/or the Products have sponsorship, approval, or affiliations that they do not have. R.C. 1345.02(B)(9).

76.     As described herein, Defendant further violated the CSPA by engaging in the following unconscionable acts and practices proscribed by R.C. 1345.03:

     a.  Knowledge at the time Plaintiff and the Class members purchased the Products that the price of the Products was substantially in excess of the price at which similar products or services were readily obtainable in similar consumer transactions by like consumers. R.C. 1345.02(B)(2).

b.  Selling the Products to Plaintiff and the Class members when it knew at the time of the transactions that Plaintiff and the Class members were unable to receive a substantial benefit from the transaction. R.C. 1345.03(B)(3).

c.  Knowingly making misleading statements of fact on which Plaintiff and the Class members were likely to—and indeed did—rely on such statements to their detriment. R.C. 1345.02(B)(6).

77.  Defendant was on notice before the filing of this suit that its conduct in misleading consumers about the Products was a violation of the CSPA. The following cases providing such notice appear in the Ohio Attorney General's Public Inspection File:

a.  *In re MillerCoors*, PIF No. 10002740 (Dec. 23, 2008) (company agrees to stop making, expressly or by implication, false or misleading health-related claims about its products);

b.  *Dann v Purdue Pharma, Inc.*, Franklin C.P. No. 07- CVH-05-6195, PIF No. 10002558 (May 08, 2007) (company prohibited from making misleading statements regarding the use of its drug product);

c.  *Cordray v. The Dannon Co., Inc.*, Franklin C.P. No. 10-CVH-12-18225, PIF No. 10002917 (Dec. 22, 2010) (company enjoined from making any express or implied claims that any of its products may be used in the diagnosis, cure, mitigation, treatment, or prevention of any disease);

d.  *DeWine v. GlaxoSmithKline, LLC*, Lucas C.P. No. CI2011-3928, PIF No. 10002956 (June 24, 2011) (company shall not make false, misleading or deceptive representations about drug products or make statements that cause likelihood of

confusion or misunderstanding as to products' source, sponsorship, or certification);

e. *In re Warner-Lambert Company, LLC*, PIF No. 10002243 (May 13, 2014) (company may not misrepresent the nature of scientific evidence relating to its drug product, disseminate written materials not appearing in peer reviewed scientific journals, or violate the Federal Food, Drug and Cosmetic Act);

f. *Brown v. Professional Weight Control Systems, Inc.*, Cuyahoga C.P. No. 999183, No. 10000104 (Oct. 14, 1980) (company enjoined from not disclosing in its advertisements that its product is not "FDA-approved safe and effective" for its use as advertised);

g. *Brown v. United Laboratories of Cleveland, Inc.*, Cuyahoga C.P. No. 996519, PIF No. 10000445 (May 7, 1980) (violation of CSPA to mislead consumers about FDA approval); and

h. *See Lyons v. Brown*, Hamilton C.P. No. A-742156, PIF No. 10000304 (Nov. 5, 1979) (concluding that defendant violated the CSPA by misleading consumers about the quality of products).

78.     Defendant was also on notice before the filing of this suit that its conduct in misleading consumers about the Products' characteristics was a violation of the CSPA because the actions taken by Defendant are "an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the [Ohio] Revised code before the consumer transaction on which [this] action is based." Ohio Revised Code § 1345.09(B).

79.     Ohio Administrative Code 109:2-4-02(A)(1) states:

It is a deceptive act or practice in connection with a consumer transaction for a supplier, in the sale or offering for sale of goods or services, to make

18

any offer in written or printed advertising or promotional literature without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations, modifications, or conditions. Disclosure shall be easily legible to anyone reading the advertising or promotional literature and shall be sufficiently specific so as to leave no reasonable probability that the terms of the offer might be misunderstood.

80.     Ohio Administrative Code 109:4-3-10(A) states:

It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to:

Make any representations, claims, or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims, or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims, or assertions of fact….

81.     Plaintiff and the Class are entitled to recover damages and other appropriate relief, as alleged below.

82.     Plaintiff incorporates by reference all preceding allegations, as though fully set forth herein.

83.     Plaintiff and Class members conferred a monetary benefit on Defendant. Specifically, they purchased consumer goods from Defendant and third-party retailers selling the Products.

84.     Defendant knew that Plaintiff and Class members conferred a benefit on Gojo and has accepted or retained that benefit. Defendant profited from the purchases and used the proceeds for business purposes.

85.     Plaintiff and Class members relied on the labeling and advertisement of Defendant's Products as described herein, yet Defendant failed to provide Plaintiff and the Class

members with its Products as advertised and labeled. Therefore, Defendant did not provide full compensation for the benefit the Plaintiff and Class members provided.

86.     Defendant acquired the monetary benefit from Plaintiff and the Class members through inequitable means, i.e., misleading and/or false labeling and advertisements concerning the product.

87.     If Plaintiff and Class members knew that Defendant would not provide the Products as advertised and labeled, they would not have purchased the Products or would have paid less.

88.     Plaintiff and Class members have no adequate remedy at law.

89.     Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class members conferred on it.

90.     Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class. members overpaid.

## COUNT II
**Violation of the Pennsylvania Unfair Trade Practices and
Consumer Protection Law, 73 Pa. Cons. Stat. §§ 201-2 & 201-3, *et seq*.
(alleged in the alternative on behalf of Pennsylvania Subclass)**

91.     Plaintiff restates and incorporates all other allegations in this Complaint as though fully pled herein.

92.     Defendant is a "person", as defined by 73 Pa. Cons. Stat. § 201-2(2).

93.     Plaintiff and the Pennsylvania Subclass purchased goods in "trade" and "commerce," as defined by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes.

94.     Defendant engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce in violation of 73 Pa. Cons. Stat. Ann. § 201-2(4), including:

    a.  Representing that its goods and services have characteristics, uses, benefits, and qualities that they do not have (73 Pa. Stat. Ann. § 201-2(4)(v));

    b.  Representing that its goods and services are of a particular standard or quality if they are another (73 Pa. Stat. Ann. § 201-2(4)(vii)); and

    c.  Advertising its goods and services with intent not to sell them as advertised (73 Pa. Stat. Ann. § 201-2(4)(ix)).

95.     Defendant's unfair or deceptive acts and practices include:

    a.  Labeling the Products with false and misleading representations that the Product prevents and/or reduce disease and illness.

    b.  Misrepresenting the Products as capable and/or effective at preventing or reducing disease and/or illness.

    c.  Stating that the use of the Products saves lives without any evidentiary support.

    d.  Failing to comply with statutory and common law duties pertaining to the advertising of the Products.

    e.  Omitting, suppressing, and concealing the material fact that the Products has not been proven safe or effective for their advertised purpose of preventing and/or reducing disease and illness.

96.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the capability of the Products to prevent and/or reduce disease and illness. Indeed, Plaintiff and the Pennsylvania Subclass were deceived by these

representations and omissions, where were material to their decisions to purchase the Products.

97.     Defendant intended to mislead Plaintiff and the Pennsylvania Subclass and induce them to rely on its misrepresentations and omissions.

98.     Had Defendant disclosed to Plaintiff and the Pennsylvania Subclass that the Products were not capable, or at the very least far less capable than advertised, at preventing and/or reducing disease and illness, Plaintiff and the Pennsylvania Subclass would not have purchased the Products or would have paid less money.

99.     Plaintiff and the Pennsylvania Subclass acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered because the representations involved technical and/or medical data that was not capable of being tested or verified by an average consumer.

100.    Defendant acted intentionally, knowingly, and maliciously to violate Pennsylvania Unfair Trade Practices and Consumer Protection Law, and recklessly disregarded Plaintiff's and the Pennsylvania Subclass members' rights.

101.    As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices and Plaintiff's and Pennsylvania Subclass members' reliance on them, Plaintiff and the Pennsylvania Subclass suffered injury, ascertainable losses of money or property, and monetary and non-monetary damages.

102.    Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is greater), treble damages, restitution, attorneys' fees and costs, and any additional relief the Court deems necessary or proper.

## COUNT III
### Violations of California's False Advertising Law ("FAL")
### Bus. & Prof. Code §§ 17500, *et seq*.
### (On Behalf of California Subclass)

103.    Plaintiff restates and incorporates all other allegations in this Complaint as though fully pled herein.

104.    Plaintiff and Defendant are both "persons[s]" as defined by California Business and Professions Code § 17506.

105.    California Business & Professions Code § 17535 authorizes a private right of action on both an individual and representative basis.

106.    Defendant holds its Products out as preventing disease and reducing illness, when, in fact, there is no valid evidence the Products do so.

107.    These misrepresentations, acts, and non-disclosures by Defendant constitute false and misleading advertising in violation of Business & Professions Code Professions Code §§ 17500, *et seq*.

108.    At all times relevant, Defendant's advertising and promotion of its Products were, and are, untrue, misleading, and likely to deceive the reasonable consumer and the public.  In fact, Defendant did deceive Plaintiff and the putative Class members by representing that its Products prevented disease and reduced illness. When, in reality, Defendant knew that there is no valid evidence its Products prevented disease and reduced illness, which the FDA warned them about.

109.    Defendant engaged in the false and/or misleading advertising and marketing of its Products, as alleged herein, with the intent to directly or indirectly induce consumers to purchase its Products, which Defendant knew, or had reason to know, did not prevent disease or reduce illness.

23

110.     Because Defendant knew or should have known that the representations and/or omissions alleged herein were untrue or misleading, Defendant acted in violation of California Business & Professions Code §§ 17500, *et seq*.

111.     Had Defendant truthfully advertised that its Products did not prevent disease or reduce illness, Plaintiff and the putative Class members would not have purchased the Products or would have purchased a different product from another manufacturer.

112.     This false and misleading advertising of the Products by Defendant presents a continuing threat to consumers, as such conduct is ongoing to this day.

113.     As a direct and proximate result of the aforementioned acts and omissions by Defendant, Defendant received and continues to hold monies rightfully belonging to Plaintiff and the putative Class members, who were led to purchase Defendant's Products during the Class Period.

114.     Plaintiff and the Class are entitled to restitution and injunctive relief pursuant to California Bus. & Prof. Code § 17203

115.     Plaintiff and the Class are entitled to recovery of reasonable attorneys' fees under, *inter alia*, California Code of Civil Procedure § 1021.5.

### COUNT IV
**Violations of California's Unfair Competition Law ("UCL")**
**Bus. & Prof. Code §§ 17200, *et seq*.**
**(Brought in the Alternative, on Behalf of California Subclass)**

116.     Plaintiff restates and incorporates all other allegations in this Complaint as though fully pled herein.

117.     Plaintiff and Defendant are each a "person" as defined by California Business & Professions Code § 17201. California Business & Professions Code § 17204 authorizes a private right of action on both an individual and representative basis.

118.    "Unfair competition" is defined by Business and Professions Code § 17200  as encompassing several types   of business "wrongs," including (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading  advertising."  The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

119.    By and through Defendant's conduct alleged in further detail above and herein, Defendant engaged in conduct which constitutes unlawful, unfair, and/or fraudulent business practices and unfair, deceptive, untrue or misleading advertising, as prohibited by California's UCL.

## "Unlawful" Prong

120.    Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendant has committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Bus. & Prof. Code §§ 17200 *et seq*., by marketing, manufacturing, and distributing Defendant's Product in violation of California's Consumers Legal Remedies Act, Civil Code § 1759, *et seq*. and California's False Advertising Law, Business & Professions Code §§ 17500, *et seq*., as well as other Federal regulations.

121.    Defendant violated the above-referenced statutes by falsely representing that its Products prevented disease and reduced illness, when in fact the product did not prevent disease or reduce illness.

122.    By advertising, promoting, manufacturing, and selling its Products in violation of those California laws, Defendant engaged in a pattern of "unlawful" business practices within the meaning of California's UCL.

**"Unfair" Prong**

123.    Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendant has committed acts of unfair competition as prohibited by Bus. & Prof. Code §§ 17200, *et seq*.

124.    Had Plaintiff and the putative class members been informed that Defendant's Products did not prevent disease and reduce illness, they would not have purchased the Products or would have purchased different products. In other words, Defendant earned the business of Plaintiff and the putative Class members by using deceptive advertising, which placed competitors at a disadvantage.  Furthermore, Plaintiff and the putative Class members were harmed in that they paid a price premium for the Products.

**"Fraudulent" Prong**

125.    Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendant engaged in acts of unfair competition, including those described above and herein, in violation of Bus. & Prof. Code §§ 17200, *et seq*., by engaging in a pattern of "fraudulent" business practices within the meaning of Bus. & Prof. Code §§ 17200, *et seq*., by falsely advertising its Products as preventing disease and reducing illness, when, in fact, the Product does not prevent disease and reduce illness.

126.    Plaintiff reserves the right to allege further conduct that constitutes other fraudulent business acts or practices.  Such conduct is ongoing and continues to this date.

**"Unfair, deceptive, untrue or misleading advertising" Prong**

127.    Defendant's advertising is unfair, deceptive, untrue, and/or misleading within the meaning of Bus. & Prof. Code §§ 17200, *et seq*., in that consumers are led to believe that Defendant's Products prevents disease and reduces illness, when, in fact, the Products do not

prevent disease or reduce illness, as alleged herein.

128.    Plaintiff and other such reasonable consumers are likely to be, and were, deceived and misled by Defendant's advertising of its Products, as preventing disease and reducing illness.

129.    As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent conduct  described herein, Defendant received and continues to receive an unfair competitive advantage and unearned commercial benefits at the expense of its competitors and the public, who unwittingly provided money to Defendant based on its misleading representations.

130.    Plaintiff and the putative Class members suffered an injury in fact because Plaintiff's money was taken by Defendant as a result of Defendant's false representations as set forth on the Products' label and other third-3rd party retailers as mentioned herein.

131.    Such acts and omissions by Defendant are unlawful and/or unfair and/or fraudulent and constitute multiple violations of California's UCL. Plaintiff reserves the right to identify additional violations by Defendant as may be established through discovery.

132.    In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiff seeks the recovery of attorneys' fees, which reward is available to a prevailing plaintiff in a class action such as this.

133.    Plaintiff and the Class are entitled to restitution and injunctive relief pursuant to Bus. & Prof. Code § 17535.

134.    Plaintiff and the Class are entitled to recovery of reasonable attorneys' fees under, *inter alia*, California Code of Civil Procedure § 1021.5.

<u>**COUNT V**</u>
**Reservation of Right to Asset Claim for Violations of the California Consumers Legal Remedies Act**
**Cal. Civ. Code §§ 1750, *et seq*.**

135.    Plaintiff restates and incorporates all other allegations in this Complaint as though

fully pled herein.

136.    On or about February 9, 2020, Plaintiff sent Defendant a demand for corrective action pursuant to California Civil Code § 1750.

137.    Plaintiff reserves the right to amend this Complaint to assert a cause of action under the CLRA, specifically, Civil Code Sections 1770(a)(4), (5) and (7), should Defendant not take timely and appropriate corrective action.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court:

A.    Certify the proposed Class and Subclasses and appoint Plaintiff and Plaintiff's counsel to represent the Class and Subclasses;

B.    Find in favor of Plaintiff, the Class, and the Subclasses on all counts asserted herein;

C.    Declare that Defendant's conduct violated the statutes referenced herein;

D.    Award damages, including compensatory, exemplary, punitive, and statutory to Plaintiff, the Class, and the Subclasses in an amount to be determined at trial;

C.    Declare the parties' rights and obligations under the laws included herein;

D.    Grant Plaintiff the injunctive relief requested;

E.    Award Plaintiff and the Class reasonable attorneys' fees and costs of suit, as allowed by law;

F.    Award Plaintiff, the Class, and the Subclasses pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and,

G.    Award such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

s/ *W.B. Markovits*

W.B. Markovits (0018514)
Terence R. Coates (0085579)
MARKOVITS, STOCK & DeMARCO, LLC
3825 Edwards Rd., Suite 650
Cincinnati, OH 45209
Telephone: (513) 665-0200
Fax: (513) 665-0219
bmarkovits@msdlegal.com
tcoates@msdlegal.com

GEORGE GESTEN MCDONALD, PLLC
David J. George (FL # 898570) (*pro hac vice forthcoming*)
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Telephone: (561) 232-6002
Fax: (888) 421-4173
dgeorge@4-justice.com

GEORGE GESTEN MCDONALD, PLLC
Lori G. Feldman (NY #2389070) (*pro hac vice forthcoming*)
102 Half Moon Bay Drive
Croton On Hudson, NY 10502
Telephone: (917) 983-9321
Fax: (888) 421-4173
LFeldman@4-Justice.com

MORRISON & ASSOCIATES
Mark Morrison, Esquire (CA #152561) (*pro hac vice forthcoming*)
113 Cherry Street, Suite 34835
Seattle, WA 98104
Telephone: (360) 440-0734
markamorrison@me.com

29